UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case Number: 15-cv-61586-COHN/SELTZER

JANET HOLLOWAY,

    Plaintiff,

vs.

ROCCHIO TUNNEL MARKETPLACE
ENTERPRISES, LLC d/b/a Valentino
Cucina Italiana, and GIOVANNI
ROCCHIO, individually,

    Defendants.
_____/

**Plaintiff's Motion in Limine**

Plaintiff, Janet Holloway, moves this Court *in limine* pursuant to Federal Rules of Evidence (FRE) 401, 402, 403, 404, 801, 802, 803 and 804, to exclude from evidence at the trial of this matter — including from any mention in voir dire or opening statement, any questions to any witness, or in closing argument — the following evidence:

**One**, expert testimony or evidence from any witness and testimony regarding "industry standards" similar to those referenced in defendants' summary judgment affidavits;

**Two**, evidence that plaintiff has filed other or previous litigation and her motivations for suing the defendants in this case;[1]

---

[1] Defendants have indicated that they will not seek to admit evidence that plaintiff has filed a charge of discrimination and the related proceeding. So that is not at issue in this motion.



**The Amlong Firm** • 500 Northeast Fourth Street • Fort Lauderdale, FL  33301 • 954.462.1983

***Three,*** hearsay testimony, character testimony, and testimony not based on personal knowledge addressed previously in plaintiff's summary judgment response and motion to strike (on topics[2] such as who made what decisions, who complained about the tip pool, about Mr. Rocchio's conversations with third parties and his employees, whether the tip pool was illegal, etc.);

***Four,*** testimony about employees with whom plaintiff communicated about joining the lawsuit or testifying for her (addressed in plaintiff's deposition);

***Five,*** evidence regarding severance paid to plaintiff after she separated from employment;

***Six,*** if plaintiff's complete relief for the alleged violation does not permit her to recover both the hourly differential for the non-tipped minimum wage plus her tips, then plaintiff seeks to exclude the evidence regarding the amount of tips plaintiff received each pay period.

## Introduction and background

1.  This action is brought by plaintiff, Janet Holloway (a restaurant server), against defendants, Rocchio Tunnel Marketplace Enterprises, LLC d/b/a Valentino Cucina Italiana, and Giovanni Rocchio, individually, pursuant to the Fair Labor Standards Act of 1938, as amended [29 U.S.C. § 201, et seq.] (hereinafter, "the FLSA" or "the Act"), 28 U.S.C. § 216 (b), and Florida's Minimum Wage Act, § 448.110, FLA. STAT., in accordance with § 24, Art. X, Florida Constitution ("§ 448.110"). This action seeks recovery for minimum wage violations that occurred during plaintiff's employment during the applicable

---

[2] Defendants have indicated they do not seek to admit the testimony to which plaintiff previously objected about how Valentino's was a great place to work and Mr. Rocchio was a great boss. So that testimony is not at issue in this motion.

three-year period.

2.      During plaintiff's deposition, among the topics addressed were, her litigation history, including bankruptcy and divorce; how she separated from employment with defendants; her motivations for suing the defendants; employees with whom she spoke about joining the litigation or serving as witnesses on her behalf; and tip pools and practices and other restaurants where she worked. See, e.g., DE 54-1, at 6 - 9; 60-64, 67-68, 75, 80-91, 94,117,

3.      During discovery, defendants served no expert report nor expert disclosure.

4.      With their motion and corrected motions for summary judgment, defendants filed, among other things, **One**, affidavits of several witnesses offering testimony about "industry standards" and how employees did not complain about how they were paid and the tip pool; and, **Two**, affidavits of witnesses offering hearsay testimony and testimony about matters in which they could not have been personally involved or was otherwise hearsay.  Defendants also made reference to evidence about industry standards and how other restaurants operated [e.g., DE 37, ¶ 16], and how defendants' employees did not object or complain to how the tip pool was administered and was happy to share tips with the managers [DE 37, ¶ 14].

## Applicable Legal Principles

• **Concerning relevance and admissibility**

Generally, the admissibility of evidence is left to the broad discretion of the district court.  Walker v. NationsBank N.A., 53 F.3d 1548, 1554 (11th Cir. 1995), citing Hines v. Brandon Steel Decks, Inc., 886 F.2d 299, 302 (11th Cir.1989).

Federal Rule of Evidence ("FRE") 402 makes generally admissible "[r]elevant

evidence," which Rule 401 defines as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence; and ... the fact is of consequence in determining the action."  Conversely, Rule 402 expressly makes irrelevant evidence inadmissible.

>As the Advisory Committee Notes to Rule 401 explain in pertinent part:
>
>The rule uses the phrase "fact that is of consequence to the determination of the action" to describe the kind of fact to which proof may properly be directed. *** The fact to be proved may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence to the determination of the action.

Fed. R. Evid. 401 advisory committee's note.

- **Concerning hearsay**

FRE 802 prohibits the admission of hearsay, which Rule 801(a)-(c) defines as, <u>inter alia</u>, "a person's oral assertion, written assertion, or nonverbal conduct" that a "person who made the statement" ... "does not make while testifying at the current trial or hearing; and ... a party offers in evidence to prove the truth of the matter asserted in the statement."

- **Concerning evidence that is more prejudicial than probative or is cumulative or time-wasting**

>Federal Rule of Evidence 403 provides that:
>
>The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

>The Advisory Committee Notes to Rule 403 state in pertinent part:
>
>The case law recognizes that certain circumstances call for the exclusion of evidence which is of unquestioned relevance.  These circumstances entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme.

Fed. R. Evid. 403 advisory committee's note.

"While relevant evidence is inherently prejudicial, Rule 403 focuses on *unfair* prejudice. United States v. Gonzalez, 718 F. Supp. 2d 1341, 1347 (S.D. Fla. 2010). Unfair prejudice is the "possibility that the evidence will excite the jury to make a decision on the basis of a factor unrelated to the issues properly before it." Mullen v. Princes Anne Vol. Fire Co., Inc., 853 F.2d 1130, 1134 (4th Cir. 1988); see also United States v. Saintil, 753 F.2d 984, 989 n. 7 (11th Cir. 1985) (noting that prejudice, under Rule 403, "relates to the likelihood of inciting the jury to an irrational decision based on an improper basis***.") (internal citations omitted).

"[C]ourts often exclude evidence because it might raise a side issue that would distract the jury from the important issues." 2 WEINSTEIN'S FEDERAL EVIDENCE § 403.05[1], pg 403-49 (Matthew Bender 2d ed).  Further,"[o]pening up this area thus invites detailed inquiries, denials, and explanations, likely to lead to multifariousness and a confusion of issues."  Outley v. City of New York, 837 F.2d 587, 595 (2nd Cir. 1988).

**Point 1.      The Court should preclude defendants, who served neither an expert disclosure nor expert report during discovery, from using expert testimony from any witness regarding "industry standards" similar to those referenced in defendants' summary judgment affidavits**.

In support of their original and corrected summary judgment motions, defendants filed affidavits from "restaurant experts"[3] and other witnesses (including their employees) providing expert witness testimony about what they contend to be industry standards and how defendants' practices comply with industry standards at other restaurants. The objectionable or inadmissible evidence includes the following testimony filed with defendants' initial and corrected motions for summary judgment:

---

[3]Defendants have indicated they will not call "restaurant experts," but did not agree to exclude testimony or evidence of industry standards similar to what they presented on summary judgment.

- Thomas House ("restaurant expert" and a consultant with "A Better House, Inc.") (about what is typical in the industry and restaurants where he worked regarding tip pools and wine stewards; about how servers compare to commission sales people, and how he believes any server, if asked, would state that she would be happy to include sommeliers, head hostesses, and/or maitre D's in the tip pool and appreciate their efforts, DE 29-3, at 23 & 24);

- Dave Raven [former owner of two restaurants] (about the "common practice and standard procedure in all restaurants I have been involved with either as an employee or owner" about dual work of management employees, tips pools, and how sommeliers, maitre D's and hostesses are paid for work performed, DE 29-3, at 17);

- James Carroll ("an experienced restaurant manager with experience at different restaurants," about how it is typical to tip wine stewards out of the tip pool and that taking 30% out of the server tip pool to compensate other eligible employees was typical, DE 37-4, at 13; DE 29-3, at 22);

- Julian Romero ("an experienced restaurant manager with experience at different restaurants," about how it is typical to tip wine stewards out of the tip pool and that taking 30% out of the server tip pool to compensate other eligible employees was typical, DE 37-4, at 12; DE 29-3);

- Defendant Giovanno Roccho (about how: "I have also spoken with numerous owners of restaurants in the area to confirm that it was typical in the industry to tip wine stewards out of the tip pool and that the 30% tip pool allocation to other eligible employees was consistent with industry standards," DE 37-1, 30);

- Servers, bartenders, and food runners that "it was typical in the industry to tip [wine

stewards, bartenders, or servers] out of the tip pool" and "taking 30% of the total collected server tip pool to compensate [stewards or other eligible employees] is reasonable and consistent with other restaurants), e.g., Affidavits of Nicholas Mikhak (¶¶ 9, 12, 15), Ariel Penizzotto (¶¶ 9, 12, 15), Peter London (¶¶ 12, 16, 20), David Raben, DE 29-3, at 15 (¶¶ 12, 19), and Ryan Martin (¶¶ 9,12), Adam Russell (¶¶ 9, 12); Keith Davis (¶¶ 12, 16, 20), Iliya Dimitrov (¶¶ 9, 12, 14, 17), Timothy Norris (¶¶ 11, 14, 17), Derek Cole (¶¶ 9, 12, 15) and Oliver Navarre (¶¶ 9, 10). Similar testimony were provided from managers of Valentino's, e.g., Natina Rocchio (¶ 11, 14), Kerry Fasanelli (¶¶ 11, 13, 15, 17), Christian Licciardo (¶¶ 11, 14), Stephan Cole (¶¶ 11, 17, 18) and Giovanni Rocchio, (¶ 30).

Such expert testimony, replete with hearsay (to which plaintiff also objects), was provided too late (on summary judgment and after the close of discovery). So, defendants should be precluded from presenting such testimony at trial. Cf. Reese v. Herbert, 527 F. 2d 1253 (11th Cir. 2008) (holding that trial court did not abuse its discretion in striking affidavit presented as part of a party's brief in opposition to summary judgment where no expert report was ever provided (although the party indicated orally it had retained one 12 days before the close of discovery) and did not provide the expert's affidavit until its summary judgment filing; and noting that the "revelation of Keller's name was not enough to discharge Reese's obligations under the federal and local rules" and that Rule 37(c)(1) precludes the use of such evidence based on a failure to disclose unless the failure was harmless).

The rules of evidence also prohibit improper opinion testimony, especially in employment cases from individuals who were not involved in the decision-making process. See, e.g., Thomas v. Atmos Energy Corp., 223 Fed. Appx. 369, 374-375 (5th Cir. 2007)

(unpublished) (district court properly excluded the statement in an employee's affidavit that a co-worker was "lazy, sorry, trifling, and good for nothing," based on the finding that it was an "an improper opinion which is not helpful to the trier of fact."). See also Grady v. BellSouth, 160 Fed. Appx. 863, 864 (11th Cir. 2005) (district court properly excluded testimony of the plaintiff's immediate supervisor, who was not involved in the decision-making process, on the issue of relative qualifications because her opinion was "at most, speculative and conclusory and not rationally based on Bentley's perception").

Also, employers' arguments in FLSA cases that they should escape liability because what they are doing is consistent with industry practice regarding the alleged violation have been rejected, as the court explained in Chung v. The New Silver Palace Restaurant, Inc., 246 F. Supp. 2d 220, 229 (D. N.Y. Sep. 13, 2002) (finding that the defendants were not entitled to tip credit against minimum wage for requiring waiters to share tips with "black jackets"):

> However, defendants cannot ascribe to "tradition" that which has been adjudged to be illegal, and the practice of forced sharing of tips with management is such an illegal practice, regardless whether or not the members of management were engaged in restaurant services that could be the subject of tipping.

Id. Cf. also Barrentine v. Arkansas Best Freight System, 450 U.S. 728, 741 (1981)[4] (recognizing that the FLSA was "not designed to codify or perpetuate [industry] customs and contracts" and any custom or contract 'falling short' of the statute's purpose, such as an agreement to pay less than the minimum wage, 'cannot be utilized to deprive employees of their statutory rights'") (citing Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 602 (1944) (rejecting employer's argument that it was tradition and custom

---

[4] Abrogated in part by 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 129 S. Ct. 1456, 173 L. Ed. 2d 398 (2009) (holding that an arbitration provision requiring the arbitration of statutory age discrimination claims was enforceable)

in the mining industry for workers not to be paid for travel time into the mine, noting that the existence of such a custom was "immaterial" if the custom violated the FLSA; such a custom could not be used to override the employees' rights under the FLSA).

**Point 2**. **The evidence that plaintiff has filed other lawsuits, including bankruptcy proceedings, is not relevant and should be excluded because the probative value is substantially outweighed by the danger of jury confusion and unfair prejudice.**

As noted above, during plaintiff's deposition, defendants inquired about, among other things, other litigation in which plaintiff was involved, and her motivations for suing the defendants. Plaintiff provided responsive information during her deposition, including about:

- bankruptcy proceedings in approximately 1999 and 2011;
- her divorce in the 1970s;
- personal injury or automobile accidents in which she has been involved.

The evidence that plaintiff has filed other lawsuits or bankruptcy proceedings should be excluded as not relevant in the trial of her minimum wage case. The complaint does not include a count related to the other litigation or the bankruptcy filing. So, the evidence that she has filed other lawsuits should be excluded.

Further, "seeking discharge in bankruptcy does not show a disregard for truth that would cast doubt on a witness's veracity." Ad-Vantage Tel. Directory Consultants v. GTE Directories Corp., 37 F.3d 1460, 1464 (11th Cir. 1994) (granting new trial on damages based on "improper and highly prejudicial cross-examination), citing United States v. Lanza, 790 F.2d 1015, 1020 (2d Cir.), cert. denied sub nom. Lyubarsky v. U.S., 479 U.S. 861, 107 S. Ct. 211, 93 L. Ed. 2d 141 (1986). Evidence of a bankruptcy filing has been excluded in other cases based on those types of concerns, including when the bankruptcy filing was not articulated as a defense for the wrongdoing alleged in the litigation. See, e.g., Kearney

v. Auto-Owners Ins. Co., 2009 U.S. Dist. LEXIS 108918, *6-7 (M.D. Fla. Nov. 5, 2009) ("the Court finds that the fact that Kearney Construction Company (or any of its related companies) has filed for bankruptcy should not be revealed to the jury, as it is an event that occurred after Auto-Owners paid Kearney's claim under the umbrella policy. Furthermore, there is no evidence that one of the reasons that Auto-Owners initially denied the claim was due to fear that the company was going to file for bankruptcy. Therefore, the Court finds that the probative value of such evidence is substantially outweighed by its potentially unfairly prejudicial effect"). Cf. also United States v. Russell, 2012 U.S. Dist. LEXIS 120436, *5 (S.D. Ind. Aug. 24, 2012) (excluding evidence of bankruptcy proceedings of the criminal defendants, noting that "[a]ny probative value is minimal and substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading the jury").

Further, as the Second Circuit explained in Outley v. City of New York, 837 F.2d 587, 591-592 (2nd Cir. 1988) (reversing based on admission of evidence and comments of the plaintiff's prior lawsuits in a 42 U.S.C. §§ 1982 and 1983 case in which "[a]n important part of the City defense was to undermine Outley's credibility by, inter alia, portraying him as a chronic litigant"):

> The charge of litigiousness is a serious one, likely to result in undue prejudice against the party charged, unless the previous claims made by the party are shown to have been fraudulent. See McCormick on Evidence § 196 at 578-81 (3d ed. 1984); 3A J. Wigmore, Evidence §§ 963, 981 (Chadbourn rev. 1970). As we said in Raysor v. Port Authority, 768 F.2d 34, 40 (2d Cir. 1985), cert. denied, 475 U.S. 1027, 106 S. Ct. 1227, 89 L. Ed. 2d 337 (1986), "[a plaintiff's] litigiousness may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant. The trial court has a duty to prevent exploitation of this prejudice . . . ." (Citation omitted.) . . .

Id.

Even if a piece of evidence is relevant, it may still be excluded if its probative value

is substantially outweighed by the danger of unfair prejudice. Admission of evidence of a litigant's other litigation — especially when the other lawsuit was not filed to challenge actions taken in the pending action — is problematic because of the potential to confuse the jury and unduly prejudice the plaintiff by suggesting that the plaintiff is financially irresponsible, litigious, or taking advantage of the system by seeking bankruptcy protection. The jury, who may not understand how a bankruptcy proceeding works, also is likely to be confused by the admission of evidence about the bankruptcy proceedings, causing the jury to misunderstand how bankruptcy proceedings operate and engage in inappropriate speculation about what may happen to any potential damages that may be awarded in this proceeding. Further, no party has disclosed any expert witness in this case, nor any witness competent to testify about how a bankruptcy proceeding works to address the prejudicial effect and danger of that type of confusion or speculation by the jury.

**Point 3.     The court should exclude hearsay and hearsay within hearsay and other inadmissible evidence, including those apparent from the face of the summary judgment affidavits.**

It appears from the summary judgment affidavits filed by defendants that they seek to rely on evidence that is clearly hearsay, or hearsay withing hearsay, or that are otherwise clearly not relevant to the issues raise in this minimum wage trial. The objectionable evidence include the following, some of which were addressed previously in plaintiff's summary judgment filings:

- Not relevant — Defendants presented testimony that the some people who provided affidavits did not object to managers and others getting money from the tip pool, or that no one objected to the managers getting tips from the pool. e.g., Affidavits of Peter London (¶¶ 10, 14, 18), David Raben (¶¶ 10, 12, 14, 17), Keith Davis (¶¶ 10, 14), Iliya Dimitrov (¶ 16), Timothy Norris (¶¶

10, 13, 16), Oliver Navarre (¶ 8), Natina Rocchio (¶¶ 9, 15), Kerry Fasanelli (¶¶ 9, 13), Christian Licciardo (¶ 9) and Stephan Cole (¶¶ 9, 13).  That evidence is not an element of the claim, and the failure of employees to object to a tip pool does not render the pool valid.

- Testimony based on hearsay or clearly not based on personal knowledge — Defendants presented testimony from employees, including non-management servers, bartenders and food runners, about who made management decisions, hired, fired, disciplined or made "any meaningful" management decisions in which they apparently were not involved, e.g., Affidavits of Mikhak (¶¶ 3-6), Peter London (¶¶ 5-8),  David Raben (¶¶ 5-9), Ryan Martin (¶¶ 3-7), Adam Russell (¶¶ 3-6), Keith Davis (¶¶ 5-8), Iliya Dimitrov (¶¶ 3-6), Timothy Norris (¶¶ 5-8), Derek Cole (¶ 3-6), and Oliver Navarre (¶¶ 3-6).

- Testimony based on hearsay or clearly based not based on personal knowledge, or otherwise conclusory testimony — Defendants also presented testimony from Giovanni Roccho, DE 37-1, concerning things about which he clearly has no knowledge, about which he is clearly "guessing" or repeating conversations with his attorneys, third parties and other restaurant managers, and conclusory opinion testimony, such as:

  - ¶ 30: "I have also spoken with numerous owners of restaurants in the area to confirm that it was typical in the industry to tip wine stewards out of the tip pool and that the 30% tip pool allocation to other eligible employees was consistent with industry standards";

  - ¶ 18: "Since Holloway's complaint doesn't provide sufficiently specific

information as to her claims about who is an ineligible employee on what days and on what basis, and because Janet Holloway refuses to allow us to finish her deposition, I am not sure who she is claiming was an ineligible employee paid out of the tip pool. Her deposition seems to suggest, but I am guessing, that they could include Kerry Fasanelli or Stephan Cole or Chrisian Licciardo, She also mentions Natina Rocchio, but I can't tell what she is alleging."

- ¶ 17: "I have attached the outside payroll company records and W-2s as Composite Exhibit 1, which show that Holloway was paid the proper minimum wage for each hour worked. In fact, they all made significantly more money; while I haven't run the calculations on every server, they probably averaged around $35-$50 per hour."

- ¶ 16: "Janet Holloway was paid all wages that she earned and there were no ineligible employees receiving tips from the tip pool. Janet Holloway was paid for every hour that she clocked in, which information was provided to the outside payroll company. . . . Perhaps there are others, but the only weeks that I could locate from 2012 to 2015 in the payroll records where she worked barely over 30+ hours is three times in 2012 (32.85 hours (check date of 8/22/12; 30.76 for check date of 8/29/12; and 30.65 hours for check date of 11/7/12); once in 2013, (30.69 hours for check date of 4/17/13);four times in 2014 (33.12 hours for the check date of 1/9/14; 30.47 hours for check date of 8/7/14; 34.66 for check date of 12/4 and 31 hours for check date 12/24/14); and once in 2015 (30.53 hours on check date of

      1/15/15). This does not include the weeks that she may not have worked, such as she did not even work the week of 9/18/13."

- ¶ 13: "Kerry Fasanelli worked from May of 2013 to September of 2015 and served a number of roles for her tenure as an employee, but was chiefly our head Hostess or Maitre D' of sorts. All the customers loved her, and often called her cell phone directly to book reservations and for other special requests that we make available to any customer. She would regularly interact with the customers throughout the night. She also covered by performing wine steward related duties on the few occasions (approximately 20 times during her entire tenure with the company) when Stephan or Christian were not working. While she was otherwise qualified to receive tips, she only accepted tips on the nights that she performed such wine-steward-related duties."

- ¶ 11: "We only tipped eligible employees, which I understand are only those employees that customarily receive tips."

As noted above, during her deposition, defendants also asked plaintiff several questions about employees with whom she communicated about joining the lawsuit or testifying for her.

Plaintiff objects to the admission or presentation of the evidence referenced above.

Not only is most of the "evidence" not relevant, but any reference to such "evidence" would be confusing to the jury (who must serve as the fact-finder) and highly prejudicial to the plaintiff in the minds of the jury so as to substantially outweigh any probative value thereof. Furthermore, the introduction of this evidence would unduly delay the trial and create confusion for the jury because it would necessitate the parties arguing and

attempting to address such matters as the effect or relevance of employees who did or did not complain, were interested in joining the lawsuit, or wanted to testify for against a particular party, and Mr. Rocchio and his employees' opinions about whether their actions violated the minimum wage laws.

Further, "extremely general information" is properly excluded. See Lee v. Rapid City Area School District 51-4, 981 F.2d 316, 322 and n. 2 (8th Cir. 1992) (en banc) (affirming age discrimination verdict for plaintiff following trial in which the judge rejected an offer of proof that a witness had received "'innumerable complaints' from parents at the beginning of the school year asking that their children not be placed in Lee's class 'because of his reputation which was rampant throughout the community that attended West Junior High School." . . Storm received complaints from both students and parents concerning Lee's teaching, and these complaints were the basis for the comment in the December 19, 1986, conference review. Counsel stated that the evidence would tend to prove that Lee was not terminated because of his age, but because of incompetence as a teacher.").

>   **Point 4.**     **If plaintiff's complete relief for the alleged minimum wage violation does not permit her to recover both the differential for the non-server minimum wage plus her tips, then plaintiff seeks to exclude the evidence regarding the amount of tips plaintiff received each week as not relevant**.

There is not much case law on the issue of whether a plaintiff's complete recovery for the minimum wage violations at issue in this case includes recovery of both the difference between the lower server minimum wage and the full minimum wage for tipped employees *plus* recovery of the tips improperly withheld (in addition to liquidated damages and declaratory or injunctive relief).  Plaintiff has found no Eleventh Circuit case.

Some cases that have addressed the issue of recovery indicate that the plaintiff cannot recover both. See, e.g., Mould v. NJG Food Serv., Inc., 2014 U.S. Dist. LEXIS 84441 * 13-14 (D. M.D. June 17, 2014) ("should Plaintiff prevail, his damages will be based on the difference between the minimum wage required by federal and state law and the wage paid by the employer. It will not, however, include recovery of amounts contributed to the tip pool because, as the Court has explained, 'neither the FLSA nor the MWHL provide for such a remedy.'"), which addresses cases holding likewise.

Other cases, including from New York, award both the differential and the retained tips, such as one of the Southern District of New York, Chan v. Sung Yue Tung Corp., 2007 U.S. Dist. LEXIS 7770, (S.D. N.Y. 2007), which, after finding violation of the FLSA and New York law, held the employee was entitled to "the difference between the full minimum wage and the reduced hourly wage they were paid because of the tip allowance that the defendants took.  Plaintiffs are also entitled to recover the amount of tips that defendants illegally retained." Id. at *53, citing Chung v. New Silver Palace, 246 F. Supp. 2d 220, 231 (D. N.Y. 2002).

If the Court determines that plaintiff is entitled to recover only the differential, then

the issue of how much tips plaintiff received each pay period is not relevant. So, evidence regarding the amount of tips plaintiff received each week should be excluded. Based on arguments defendants have made so far, plaintiff expects defendants to make arguments to the jury to suggest that plaintiff received a lot of tips each week and is simply being greedy with her lawsuit (despite what the law provides). So, if plaintiff is not entitled recover the tips taken from her as well as the differential, the admission of the evidence would prejudicial to plaintiff and is likely to cause jury confusion and a mini-trial on the FLSA policies as to why a plaintiff who was paid tips can still recover the differential. In that event, plaintiff would seek to exclude evidence of the amount of tips plaintiff received each pay period.

If, however, the Court determines that plaintiff may recover both the differential and the return of tips improperly taken, then this point becomes moot.

## Conclusion

Therefore, plaintiff respectfully requests that this Court enter an order granting Plaintiff's Motion in Limine, and ordering defendants not to mention evidence outlined above during voir dire, opening statements, direct or cross examinations, or closing arguments.

Certificate of conferral. By the filing and signing of this motion, the undersigned counsel for the plaintiff certifies pursuant to Local Rule 7.1 that she conferred in good faith with counsel for defendants about their position on the evidence sought to be excluded in this motion. However, the parties were unable to reach an agreement on the exclusion of the evidence.

Respectfully submitted,

   *s/ Jennifer Daley*
WILLIAM R. AMLONG
Florida Bar No: 470228
WRAmlong@TheAmlongFirm.com
JENNIFER DALEY
Florida Bar No: 856436
JDaley@TheAmlongFirm.com

AMLONG & AMLONG, P.A.
500 N.E. Fourth St., Second Floor
Fort Lauderdale, Florida 33301
(954) 462-1983
***Attorneys for the Plaintiff,***
***Janet Holloway***

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the United States District Court for the Southern District of Florida and thereby electronically transmitted to the following counsel of record this day.

*/s/ Jennifer Daley*
JENNIFER DALEY

## Service List:

| | |
|---|---|
| WILLIAM R. AMLONG | SCOTT A. MAGER |
| Florida Bar Number: 470228 | Florida Bar Number 768502 |
| WRAmlong@TheAmlongFirm.com | Service@MagerParuas.com |
| JENNIFER DALEY | MAGER PARUAS, LLC |
| Florida Bar Number: 856436 | 2719 Hollywood Blvd., 1st Floor |
| Jdaley@theamlongfirm.com | Hollywood, FL 33020 |
| AMLONG & AMLONG, P.A. | (954) 763-2800 |
| 500 Northeast Fourth Street | |
| Fort Lauderdale, FL 33301-1154 | JAMIE DOKOVNA |
| (954) 462-1983 telephone | Florida Bar Number 592722 |
| (954) 462-3192 facsimile | Jdokovna@bplegal.com |
| ***Attorneys for Plaintiff*** | BECKER & POLIAKOFF, P.A. |
| | 625 N Flagler Dr., 7th Floor |
| | West Palm Beach, FL 33401 |
| | (561) 655-5444 |
| | ***Counsel for the Defendants*** |